[Cite as *In re T.H.*, 2014-Ohio-2985.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100852**

# IN RE: T.H.
# A Minor Child

[Appeal By Mother]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD 10913091

**BEFORE:** Keough, P.J., McCormack, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 3, 2014

**ATTORNEY FOR APPELLANT**

Daniel J. Bartos
Bartos & Bartos, L.P.A.
20220 Center Ridge Road, Suite 320
Rocky River, Ohio 44116

**ATTORNEY FOR APPELLEE C.C.D.C.F.S.**

Timothy J. McGinty
Cuyahoga County Prosecutor
By:   Mark Adelstein
Assistant County Prosecutor
Cuyahoga County Department of Children
and Family Services
8111 Quincy Avenue, Room 450
Cleveland, Ohio 44104

**GUARDIAN AD LITEM FOR CHILD**

James H. Schultz
1370 Ontario Street, Suite 1520
Cleveland, Ohio 44113

**ATTORNEY FOR L.J.**

Rufus Sims
1370 Ontario Street, Suite 330
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, P.J.:

{¶1} Appellant-mother ("appellant"), appeals from the judgment of the Common Pleas Court, Juvenile Division, granting permanent custody of her minor child, T.H., to appellee, the Cuyahoga County Department of Children and Family Services ("CCDCFS").[1]  For the reasons that follow, we affirm.

{¶2} On July 20, 2011, CCDCFS requested and received an ex parte telephonic order of custody of T.H.  The basis for the request was that L.J., the legal guardian of T.H., L.H.,[2] and appellant, who was a minor at the time, was charged with child endangering where the children were alleged to be the victims.  When T.H. and appellant were removed from the L.J.'s home, it was CCDCFS's policy that T.H. and appellant not be placed in the same foster placement.  Therefore, T.H. and L.H. were placed in foster care together, while appellant was placed in a different foster home.

{¶3} The day after removal of the children, CCDCFS filed a complaint alleging dependency and requested a disposition of temporary custody of all the children, including T.H.  Predispositional temporary custody was granted to CCDCFS two days later.  On December 7, 2010, the trial court conducted an adjudicatory hearing on CCDCFS's amended complaint.  Appellant and L.J. subsequently entered into an

[1]The parties are referred to herein by their initials or title in accordance with this court's established policy regarding non-disclosure of identities in juvenile cases.

[2] L.H. is appellant's sister, who was a minor in 2011.

admission to the amended complaint; T.H. was adjudicated dependent and placed in the temporary custody of CCDCFS on January 31, 2011. In September 2011, appellant was placed in the same foster home as T.H. and L.H., and continued to reside there for approximately 16 months until January 2013 when she voluntarily left the home.

{¶4} On July 10, 2012, CCDCFS filed a motion to modify temporary custody to permanent custody pursuant to R.C. 2151.413, and the court held an evidentiary hearing on the motion in August 2013. The trial court issued an oral decision granting permanent custody of T.H. to CCDCFS, and subsequently memorialized its order of permanent custody, terminating appellant's parental rights in a written decision dated December 2, 2013. Appellant now appeals from this order, raising three assignments of error.

## I. Standard of Review

{¶5} When reviewing a trial court's judgment in child custody cases, the appropriate standard of review is whether the trial court abused its discretion, which implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *Miller v. Miller*, 37 Ohio St.3d 71, 73, 523 N.E.2d 846 (1988). An appellate court must adhere to "'every reasonable presumption in favor of the lower court's judgment and finding of facts.'" *In re Brodbeck*, 97 Ohio App.3d 652, 659, 647 N.E.2d 240 (3d Dist.1994), quoting *Gerijo, Inc. v. Fairfield*, 70 Ohio St.3d 223, 226, 638 N.E.2d 533 (1994).

{¶6} Where clear and convincing proof is required at trial, a reviewing court will

examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof. *In re T.S.*, 8th Dist. Cuyahoga No. 92816, 2009-Ohio-5496, ¶ 24, citing *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). Judgments supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *Id.*

{¶7} "Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to cause a trier of fact to develop a firm belief or conviction as to the facts sought to be established." *T.S.* at ¶ 24, citing *In re Estate of Haynes*, 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986).

{¶8} R.C. 2151.414 establishes a two-part test for courts to apply when determining a motion for permanent custody to a public services agency. The statute requires the court to find, by clear and convincing evidence, that (1) granting permanent custody of the child to the agency is in the best interest of the child and (2) either the child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(E) are present; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private children services agencies for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1).

## II. R.C. 2151.414(B)(1)(a) and (d) — Second Prong

{¶9} In her first assignment of error, appellant contends that the trial court erred in granting CCDCFS permanent custody of T.H. because the requirement of R.C. 2151.414(B)(1)(d) was not satisfied by clear and convincing evidence.

{¶10} The trial court determined that the second prong of R.C. 2151.414(B)(1) was satisfied because T.H. had been in the temporary custody of a public services agency for 12 or more months of a consecutive 22-month period. (R.C. 2151.414(B)(1)(d)); or alternatively, that T.H. could not be placed with either parent within a reasonable amount of time or should not be placed with his parents. (R.C. 2151.414(B)(1)(a)).

{¶11} T.H. was placed in emergency temporary custody of CCDCFS on July 20, 2010. Pursuant to R.C. 2151.414(B)(1), temporary custody began on September 20, 2010 — 60 days after removal. The trial court awarded temporary custody to CCDCFS on January 31, 2011. At the time CCDCFS filed its motion to modify temporary custody to permanent custody on July 12, 2012, T.H. had been in the temporary custody of CCDCFS for over 18 months. Accordingly, the second prong of R.C. 2151.414(B)(1) is satisfied.

{¶12} Appellant contends that because the separation at the time of removal was based on CCDCFS's policy that she and T.H. not be placed together in foster care and that she was subsequently placed in the same foster home with T.H., the placement should not be characterized as "temporary custody"; rather it was "protective supervision."

**{¶13}** Pursuant to R.C. 2151.011(B)(42), protective supervision is a disposition that the juvenile court may make when considering a complaint for abused, neglected, dependent, or unruly child. In this case, the disposition was temporary custody, not protective supervision, and no party requested for a modification of temporary custody to protective supervision. Accordingly, the circumstances in this case cannot be "characterized" as protective supervision without a specific disposition as such.

**{¶14}** We agree that appellant should not be penalized for this involuntary separation from her child, especially when the allegations that caused appellant and T.H. to be removed from their legal guardian were not attributable to any abuse or neglect at the hands of appellant. Furthermore, while we question CCDCFS's seemingly blanket policy of separating a parent and child in these instances, the testimony revealed that separation was reasonable.

**{¶15}** According to social worker Cynthia Hurry, appellant and T.H. were also separated because there was no bond or any real attachment between them. At the time of removal, T.H. was detached and developmentally delayed, a concern to the agency that appellant was not appropriately caring for him. The separation occurred not only because of CCDCFS policy, but because of these other reasons as well.

**{¶16}** Moreover, even if appellant and T.H. were initially placed together at the time of removal, it would not change the fact that T.H. has been in the temporary custody of a public services agency for 12 or more months of a consecutive 22-month period.

Appellant's placement is irrelevant under this prong of R.C. 2151.414(B)(1)(d). Rather, this issue would be better raised in addressing the factors considered under R.C. 2151.414(E). Accordingly, clear and convincing evidence exists to support the trial court's decision finding the second prong of R.C. 2151.414(B)(1) was satisfied.

{¶17} The trial court alternatively found that even if the child had not been in the temporary custody of a public services agency for 12 or more months of a consecutive 22-month period, T.H. could not be placed with either of his parents within a reasonable period of time or should not be placed with his parents. *See* R.C. 2151.414(B)(1)(a).

{¶18} Because we have held that the juvenile court properly found that T.H. was in the temporary custody of CCDCFS for at least 12 months pursuant to R.C. 2151.414(B)(1)(d), we need not address whether the agency failed to prove T.H. could not be placed with appellant within a reasonable time. *See In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 21 ("An agency need no longer prove that a child cannot be returned to his parents within a reasonable time or should not be returned to the parents, so long as the child has been in the temporary custody of an agency for at least 12 months"); *In re L.C.*, 8th Dist. Cuyahoga Nos. 93319, 93320 and 93321, 2009-Ohio-6651, ¶ 18.

{¶19} Appellant's first assignment of error is overruled.

### III. R.C. 2151.414(B)(1) — First Prong, Best Interest

{¶20} In her second assignment of error, appellant contends that the trial court

erred in granting CCDCFS permanent custody because permanent custody was not in T.H.'s best interest.

{¶21} Under the first prong of R.C. 2151.414(B)(1), the trial court is required to make a finding that permanent custody is in T.H.'s best interest by applying the factors set forth in R.C. 2151.414(D)(1)-(5).

{¶22} R.C. 2151.414(D) requires that in determining the best interest of the child, the court must consider all relevant factors, including, but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶23} "There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. This court has stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. *In re Moore*, 8th Dist. Cuyahoga No. 76942, 2000 Ohio App. LEXIS 3958 (Aug. 31, 2000), citing, *In re Shaeffer Children*, 85 Ohio App.3d 683, 621 N.E.2d 426 (3d Dist.1993).

{¶24} In this case, the trial court considered all relevant factors, including those listed in R.C. 2151.414(D)(1)-(5). A review of the record clearly and convincingly supports the trial court's finding that permanent custody is in T.H.'s best interest.

{¶25} Elizabeth Zolla ("Zolla"), a social worker with Twelve of Ohio, testified regarding the interaction between T.H. and his foster parent. She stated that T.H. enjoys his foster parent's encouragement, especially when she "brags on him" about new skills that he is accomplishing. It was explained that when T.H. was initially placed with his foster parent, he was very detached, was afraid of being touched, and would not speak or look at anyone; now, he interacts with others, greets people, and is described as "lovable."

{¶26} T.H.'s foster parent testified regarding how T.H. responded after appellant left the residence in 2013.

> He didn't respond no way or no how. It hasn't really affected him. I know that he knows she's gone because when she comes to see him, hi, mom. But when she leaves, it's not like he cries a period of time or he goes and slump[s] in the corner. He goes on, you know. He knows that's mom, but because they never really had an affectionate bond, it really doesn't affect him.

(Tr. 282.)

{¶27} Regarding T.H. and appellant's interaction, T.H.'s foster parent testified that appellant regularly visits with T.H. and, while T.H. addresses appellant as "mom," there is no hugging. Furthermore, appellant and T.H.'s visits were initially unsupervised in the home, however, after it was noticed that T.H. was starting to withdraw himself, the visits became supervised.

{¶28} Appellant testified that she regularly visits with T.H. in his home where she helps him with his preschool words and plays with him. She stated she can care for T.H. and provide for his basic needs. Appellant admitted that T.H.'s foster parent is doing a "good job" with T.H.

{¶29} While the testimony demonstrates that appellant has made some improvements in bonding with and attending to T.H., she still needs prompting about his care and parenting. As explained by Zolla, appellant does not have "an issue with application of caring for [T.H.], but [with] the intuition to act without being prompted at times" that appellant lacks in parenting T.H. (Tr. 224.)

{¶30} T.H.'s foster parent testified that her children have bonded with both T.H. and L.H., and they are part of the family. They go on all vacations, gatherings, holidays together. "They're my family like they're mine. * * * He's just like he's mine, like he's ours, that he's been around and everybody embraces him like they should." (Tr. 283-284.)

{¶31} While T.H. was too young to express his wishes, his guardian ad litem expressed to the court that T.H. should remain with his foster parent, but that appellant be given more time to work on her case plan. The trial court found that the guardian's report and recommendation inappropriately considered the effect of permanent custody on the appellant, in violation of R.C. 2151.414(C). The record supports this finding. Moreover, T.H. has been in temporary custody for four years — T.H. is entitled to

permanency and stability.

**{¶32}** Regarding custodial history, T.H. was removed from his legal guardian when he was three years old after an allegation of child endangering was filed. As a result, he was placed with his current foster placement in July 2010. T.H. has been in this same placement since that time — almost four years. During his placement, he has made substantial improvements, especially in his ability to communicate. The testimony reveals that T.H. has made a "total turn around" since being placed in foster care.

**{¶33}** It is clear that T.H. has a need for a legally secure permanent placement; however, based on the record before this court, this type of placement cannot be achieved without a grant of permanent custody to the agency. T.H.'s foster parent is willing to adopt both T.H. and L.H. Alternative options for T.H. that were before the trial court were not options that would achieve a secure stable placement. Moreover, T.H.'s foster parent testified that appellant is welcome in her home, would never be prevented from coming into her home, and she will continue to facilitate a relationship between the two, "if [appellant] wants it." This statement is supported by the evidence presented.

**{¶34}** Upon our review of the record, we find that the trial court weighed all relevant factors and made a decision in the best interest of T.H. This court finds competent and credible evidence in the record supporting the trial court's decision. Appellant's second assignment of error is overruled.

IV.   Exercise Reasonable Efforts for Reunification

**{¶35}** In her third assignment of error, appellant contends that the trial court erred in granting permanent custody to CCDCFS because the agency did not exercise reasonable efforts to return the child to her home or otherwise avoid permanent custody pursuant to R.C. 2151.419.

**{¶36}** CCDCFS moved for permanent custody of T.H. pursuant to R.C. 2151.413. The Ohio Supreme Court has held that by its terms, R.C. 2151.419 "does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 41-43, citing *In re A.C.*, 12th Dist. Clermont No. CA-2004-05-041, 2004-Ohio-5531, ¶ 30. Therefore, the trial court was not required to make any specific determination whether CCDCFS made reasonable efforts.[3]

**{¶37}** Accordingly, appellant's third assignment of error is overruled.

**{¶38}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

---

[3]However, if the trial court used R.C. 2151.414(B)(1)(d) to satisfy the first prong in determining whether to grant permanent custody, the court would have been required to address the issue of whether CCDCFS made reasonable efforts through case planning to reunify appellant and T.H.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

TIM McCORMACK, J., and
EILEEN T. GALLAGHER, J., CONCUR