[Cite as *In re G.W.*, 2022-Ohio-1678.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE G.W. | : | |
| | : | |
| Minor Child | : | No. 110938 |
| | : | |
| [Appeal by D.W., Mother] | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** May 19, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD18906317

---

### *Appearances:*

Christina M. Joliet, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee*.

EMANUELLA D. GROVES, J.:

{¶ 1} Appellant-mother ("Mother") appeals from the judgment of the
Cuyahoga County Common Pleas Court, Juvenile Division, granting permanent
custody of her minor child, G.W., to appellee, the Cuyahoga County Department of

Children and Family Services ("CCDCFS" or the "agency").[1]  For the reasons that follow, we reverse the juvenile court's judgment and remand the matter for further proceedings consistent with this opinion.

## **Procedural and Factual History**

{¶ 2} On May 14, 2018, CCDCFS filed a complaint alleging that G.W., born August 17, 2013, was a neglected, abused, and dependent child as defined by R.C. 2151.03(A)(3), 2151.031(B), and 2151.04(B).  The complaint averred, in part, the following particulars:

> 1. Mother fails to provide a safe living environment for the child. Mother has failed to protect herself and child from a domestically violent boyfriend.  Mother and a boyfriend have engaged in physical domestic violence in the presence of the child at least three times in the past four months and as recently as May 3, 2018.
>
> 2. Mother has untreated mental health issues which interfere with her ability to provide care for the child.  Mother has been diagnosed with bipolar disorder and depression but is not engaged with services to address her mental health.  Mother has failed to comply with a court-ordered mental health assessment.
>
> 3. Mother has two criminal convictions for driving while under the influence of alcohol.  Mother has a criminal conviction for child endangering due to G.W. being a passenger in the vehicle during one of these incidents.  Mother has unresolved matters before the Cleveland Municipal Court and the Berea Municipal Court due to non-payment.
>
> 4. Mother uses marijuana while being the sole caregiver for the child. Mother has been referred to multiple substance abuse assessments but has failed to comply.

---

[1] The child's father, C.E. ("Father"), is not a party to this appeal, but will be referenced in the discussion to provide context.

5. Father, C.E. ("Father"), has failed to support, visit, or communicate with the child on a consistent basis and has had minimal involvement with the child since birth.

{¶ 3} Along with the complaint, CCDCFS also filed a motion for pre-dispositional temporary custody of G.W. to the agency. In support, the agency indicated that G.W. was then in the care of a maternal aunt pursuant to a safety plan that was executed on May 4, 2018, and set to expire on June 4, 2018. The juvenile court granted predispositional temporary custody to CCDCFS.

{¶ 4} The agency developed and filed a case plan to assist Mother in remedying the issues that led to CCDCFS' involvement. To address Mother's mental health and substance-abuse issues, the agency required Mother to complete a mental-health assessment, engage in counseling, and be compliant with all medications. To address the domestic violence concerns, the agency required Mother to participate in domestic violence classes.

{¶ 5} Additionally, to address Mother's housing issue, the agency required Mother to maintain stable, safe, and appropriate housing for herself and G.W. Further, the case plan included counseling for G.W., who had witnessed ongoing domestic violence in the home between Mother and Mother's boyfriend. Finally, to address the agency's concern that Father had not established a relationship with G.W., the case plan required that Father establish a parent-child relationship with G.W. and make arrangements to begin providing financial support

{¶ 6} At a hearing on July 3, 2018, Mother denied the allegations in the complaint. The juvenile court referred Mother to the public defender's office for

legal assistance. The juvenile court also held in abeyance a motion filed by the agency for temporary custody and ordered that G.W. remain in the placement with the maternal aunt.

{¶ 7} On August 9, 2018, at an adjudicatory hearing, Mother again denied the allegations of the agency's complaint. After hearing testimony, the juvenile court found the allegations were proven by clear and convincing evidence and proceeded to adjudicate G.W. abused and dependent. The juvenile court also found that "the child's continued residence in or return [D.W.], Mother will not be contrary to the child's best interest." In addition, the juvenile court ordered that upon verification of Mother's current housing, G.W. shall be returned to Mother and reside with her at the domestic violence shelter.

{¶ 8} On October 9, 2018, CCDCFS filed a motion to amend its previously filed motion for predispositional temporary custody to agency, to that of legal custody to Mother, with protective supervision. In the brief in support, CCDCFS stated it believed the prayer for relief was the disposition that was in G.W.'s best interest. After a hearing held January 16, 2019, the juvenile court placed G.W. in the protective supervision of CCDCFS. The juvenile court also approved an amended case plan requiring that Mother complete drug and alcohol assessments, comply with substance-abuse treatment recommendations, and submit to random drug tests. In addition, the juvenile court found that the permanency plan for the child was legal custody to Mother.

{¶ 9} On May 6, 2019, CCDCFS filed a motion for first extension of protective supervision, noting that the then order would be expiring on May 13, 2019. In the brief in support, CCDCFS stated:

> Mother has completed the following requirements: obtained and maintained safe and stable housing, is able to provide for the child's basic needs, and completed an AOD assessment. However, Mother has not completed the following objectives of the case plan: a recommended intensive out-patient treatment program ("IOP"), requested drug screens, the recommended mental health and domestic violence services.

Following a hearing held on June 5, 2019, the juvenile court granted the agency's motion.

{¶ 10} On July 1, 2019, CCDCFS filed a motion to modify protective supervision to temporary custody. In the affidavit filed in support of the agency's motion, caseworker Norma De Jesus ("De Jesus") averred that, on June 29, 2019, Mother and child were involved in a car accident, resulting in injuries to both. De Jesus also averred that Mother was driving while severely intoxicated and that G.W. was not properly restrained in the car. After a hearing, the juvenile court found there was probable cause for removal of G.W. from Mother's care and that there was not a suitable relative, who was willing to be a temporary custodian. Thus, the juvenile court committed G.W. to the emergency care and custody of the agency.

{¶ 11} At a hearing on September 23, 2019, Mother agreed to the agency's motion to modify protective supervision to temporary custody. By journal entry, dated October 21, 2019, the juvenile court granted the agency's motion for temporary custody.

{¶ 12} On May 28, 2020, CCDCFS filed a motion to modify temporary custody to legal custody to G.W.'s maternal grandmother, S.M. In support of the motion, CCDCFS noted that prior to filing the motion, the agency developed a case plan to facilitate reunification, but Mother had failed to complete the objectives. CCDCFS also noted that the agency referred Mother for mental health, domestic violence, and substance-abuse services, but Mother was not compliant. In addition, CCDCFS noted that Mother did not have safe, stable housing, and was not compliant with the terms of her probation to the Cuyahoga County Court of Common Pleas. CCDCFS further noted that G.W.'s maternal grandmother was able to provide for the child's daily needs and was willing to provide a permanent home.

{¶ 13} On November 2, 2020, CCDCFS filed a motion to amend its prior motion for legal custody to the maternal grandmother to a motion for permanent custody. In support of the motion, CCDCFS asserted that the condition listed in R.C. 2151.414(B)(1) existed. Specifically, that G.W. had been in the temporary custody of the agency for twelve or more months of a consecutive twenty-two-month period. In the affidavit filed in support of the agency's motion, caseworker Rayshawn Eberhardt ("Eberhardt") averred in pertinent part, as follows:

> 2. The child was committed to the pre-dispositional temporary custody of CCDCFS on July 1, 2019
>
> 3. The child was adjudicated abused and dependent on September 10, 2018,
>
> 4. The child was committed to the temporary custody of CCDCFS on October 25, 2019.

5. A case plan was filed with Juvenile Court and approved which required that mother complete a substance abuse assessment and comply with treatment recommendations, comply with random drug screens, comply with mental health treatment and prescribed medication, complete domestic violence classes, maintain stable and appropriate housing, and maintain the ability to meet the child's basic needs.

6. Mother completed a substance abuse assessment and was recommended for IOP. Mother failed to comply with the substance abuse treatment recommendations and has failed to comply with random drug screens.

7. Mother had failed to consistently comply with mental health treatment.

8. Mother had not visited or communicated with the child since on or about August 2020.

{¶ 14} In response, on July 13, 2021, Mother filed a motion for legal custody of G.W., asserting that she was ready and able to have physical care of G.W. and that she had substantially complied with the case plan services.

{¶ 15} On July 20, 2021, the juvenile court held a dispositional hearing.

**Dispositional Hearing**

{¶ 16} At the hearing, CCDCFS presented the testimony of Eberhardt, who testified in conformity with the above affidavit she provided in support of the agency's motion for permanent custody. Eberhardt, who inherited the case in August 2020, testified that the case's history revealed that Mother had not made significant progress with the developed case plan and that Mother was inconsistent in her engagement.

{¶ 17} Eberhardt testified that Mother completed a mental-health assessment, but failed to follow through with individual counseling and that by the

time of the hearing, Mother's compliance with the mental health component was unknown. Eberhardt explained Mother failed to provide an updated release to permit the provider to communicate with the agency, noting that she made efforts to meet with Mother to obtain the release, but none ultimately successful.

{¶ 18} Eberhardt testified about the substance abuse component, noting that Mother completed an IOP, began aftercare, and tried to maintain sobriety, but that, as of December 2020, Mother had failed to submit to any of the agency's random drug screens. Eberhardt also noted that in December 2020, Mother self-reported that she had relapsed.

{¶ 19} Eberhardt testified that Mother failed to complete the domestic violence program the agency recommended, opting instead to complete an eight-hour domestic violence class online. Eberhardt testified that the agency deemed the online program insufficient, because of Mother's long history of being in domestic violent relationships. Eberhardt explained that the agency requested, and the provider agreed, to combine the domestic violence mental health components, but Mother did not follow through.

{¶ 20} Eberhardt testified that the agency referred Mother to the Community Collaborative for assistance with her housing needs. Eberhardt stated that towards the latter part of 2020, Mother did have independent housing, but at the time of the trial, Mother still lacked stable housing.

{¶ 21} Eberhardt testified she found it difficult to coordinate supervised visits between Mother and G.W. Eberhardt stated that because Mother was not

consistent, the visits never became unsupervised. Eberhardt noted that G.W. enjoyed the visits with Mother.

{¶ 22} Eberhardt testified that Mother was initially responsive to her encouragement to engage in the case plan, but then later it became increasingly difficult to reach Mother either by phone calls or by texts. Eberhardt noted being able to reach Mother sporadically and eventually discovering that Mother had been jailed, because of a probation violation.

{¶ 23} Eberhardt testified that G.W. was residing with a maternal aunt, where her basic needs were being met and where she was thriving. Eberhardt explained that the agency had planned to place G.W. with the maternal grandmother, but those plans fell apart, when the maternal grandmother indicated that, based on her work schedule, she would not be able to meet G.W.'s basic needs. Eberhardt noted that the maternal grandmother offered that G.W.'s maternal aunt would be the best person to care for the child and ensure that all needs were met.

{¶ 24} Eberhardt opined that returning G.W. to mother would not serve the child's best interest and recommended that the juvenile court grant the agency's motion for permanent custody.

{¶ 25} Thereafter, the juvenile court continued the proceedings, which reconvened on September 17, 2021. At that time, G.W.'s guardian ad litem, Tom Kozel, (the "GAL"), who previously filed a written report, orally recommended that permanent custody be granted to the agency.

{¶ 26} The GAL noted that G.W. had been in the agency's custody beyond two years, that Mother had not been able to document extended sobriety, and that the agency's concern about Mother's mental health issues remained. In addition, the GAL noted that Mother had not procured safe and stable housing throughout the history of the case. Finally, the GAL noted that G.W. was in a home, with a relative that was committed to caring for the child.

{¶ 27} On October 4, 2021, the juvenile court journalized an entry terminating all parental rights and granting permanent custody to the agency.

{¶ 28} Mother now appeals and raises the following sole assignment of error for our review:

## Assignment of Error

The trial court's order granting permanent custody to the agency was not based upon sufficient clear and convincing evidence, was against the manifest weight of the evidence and it erred in finding permanent custody to be in the best interest of the child.

## Law and Analysis

{¶ 29} In her sole assignment of error, Mother argues the juvenile court erred in granting permanent custody to the agency because the decision is not supported by clear and convincing evidence, is against the manifest weight of the evidence, and not in G.W.'s best interest.

{¶ 30} At the outset, we note, it is well established that a parent has a fundamental right to raise and care for his or her child. *In re L.M.*, 8th Dist. Cuyahoga No. 106072, 2018-Ohio-963, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28; *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825,

895 N.E.2d 809, ¶ 40. We recognize that termination of parental rights is "the family law equivalent of the death penalty in a criminal case." *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, citing *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14.

{¶ 31} An appellate court will not reverse a juvenile court's decision awarding permanent custody to an agency if the judgment is supported by clear and convincing evidence. *In re J.M-R.*, 8th Dist. Cuyahoga No. 98902, 2013-Ohio-1560, ¶ 28. "Clear and convincing evidence" is that measure or degree of proof that is more than a "preponderance of the evidence," but does not rise to the level of certainty required by the "beyond a reasonable doubt" standard in criminal cases. *In re K.S.*, 8th Dist. Cuyahoga No. 109928, 2021-Ohio-694, ¶ 15, citing *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 8, citing *In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994), citing *Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176, 180-181, 512 N.E.2d 979 (1987). It "produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re K.S.* at ¶ 15, citing *In re M.S.* at ¶ 18.

{¶ 32} Therefore, we examine the record to determine whether the juvenile court had sufficient evidence to meet the required degree of proof. "Judgments supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence." *In re L.W.*, 8th Dist. Cuyahoga No. 107708, 2019-Ohio-1343, at ¶ 24, citing *In re T.S.*,

8th Dist. Cuyahoga No. 92816, 2009-Ohio-5496, ¶ 24, citing *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990).

{¶ 33} The termination of parental rights is governed by R.C. 2151.414. *In re M.H.*, 8th Dist. Cuyahoga No. 80620, 2002-Ohio-2968, ¶ 22. R.C. 2151.414 sets forth a two-part test courts must apply when deciding whether to award permanent custody to a public services agency.

## First Prong: R.C. 2151.414(B)(1)(a)-(e)

{¶ 34} Under the first prong, the juvenile court must find by clear and convincing evidence one of the following five factors:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated and abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(a)-(e).

{¶ 35} Only one of the factors must be present for the first prong of the permanent custody analysis to be satisfied. *In re S.S.*, 8th Dist. Cuyahoga No. 109356, 2020-Ohio-3039, ¶ 28, citing *In re L.W.*, 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657, ¶ 28.

{¶ 36} In this matter, the juvenile court determined that the condition set forth in R.C. 2151.414(B)(1)(d) applied. We note, R.C. 2151.414(B)(1)(d) permits a juvenile court to grant a children services agency permanent custody of a child if, at the time the agency files its permanent custody motion, the child has been in the agency's temporary custody for twelve or more months of a consecutive twenty-two-month period. *See In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 26 (construing R.C. 2151.414(B)(1)(d) and explaining that before children services agency can seek permanent custody under R.C. 2151.414(B)(1)(d), the child must have been in agency's temporary custody for at least twelve months before the agency files a permanent custody motion).

{¶ 37} We further note, the time-period for R.C. 2151.414(B)(1)(d) is calculated from when the child enters custody of the agency and the filing of the motion for permanent custody. *In re J.C.*, 8th Dist. Cuyahoga No. 106272, 2018-Ohio-2234, ¶ 29, citing *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 26.

{¶ 38} The juvenile court's October 4, 2021 judgment stated in relevant part that "the child, has been in temporary custody of a public children services agency or private child placing agency for twelve or more months of a consecutive twenty-two-month period." Mother does not dispute the juvenile court's finding under R.C. 2151.414(B)(1)(d). Indeed, the record established that at the time CCDCFS filed its motion for permanent custody, on November 30, 2020, G.W. had been in the agency's temporary custody for approximately 16 months for purposes of R.C. 2151.414(B)(1). Consequently, the juvenile court's finding that R.C. 2151.414(B)(1)(d) applied is clearly and convincingly supported by the record.

{¶ 39} We point out, when R.C. 2151.414(B)(1)(d) applies, the trial court is not required to make any other finding and can immediately proceed to the best-interest determination. *In re L.W.,* 8th Dist. Cuyahoga No. 107708, 2019-Ohio-1343, ¶ 26, citing *In re T.H.,* 8th Dist. Cuyahoga No. 100852, 2014-Ohio-2985, ¶ 18; *J.C.* at *id.*

{¶ 40} Because the juvenile court's finding under R.C. 2151.414(B)(1)(d) is clearly and convincingly supported by the record, the first prong of the permanent custody analysis is satisfied in this case.

## Second Prong: R.C. 2151.414(D)

{¶ 41} The second prong also requires the juvenile court to find by clear and convincing evidence that granting permanent custody to the agency is in the best interest of the child. Here, we review a trial court's best-interest determination under R.C. 2151.414(D) for an abuse of discretion. *In re D.A.,* 8th Dist. Cuyahoga

No. 95188, 2010-Ohio-5618, ¶ 47.   In this regard, "'[a] trial court's failure to base its decision on a consideration of the best interests of the child constitutes an abuse of discretion.'" *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 60.  "An abuse of discretion is more than a mere error of law or judgment; it implies that the court's decision was unreasonable, arbitrary, or unconscionable."  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 42} R.C. 2151.414(D)(1) sets forth best-interest factors that the court must consider when making the best-interest determination under R.C. 2151.414(D)(1), including

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child * * *;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 43} The juvenile court has considerable discretion in weighing these factors. *In re D.A.* at ¶ 47. Although a trial court is required to consider each relevant factor under R.C. 2151.414(D)(1) in making a determination regarding permanent custody, "there is not one element that is given greater weight than the others

pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Moreover, "[R.C. 2151.414(D)(1)] requires a weighing of all the relevant factors * * * [and] requires the court to find the best option for the child * * *." *Id.* at ¶ 64.

{¶ 44} In this matter, we begin our inquiry into the second prong by observing that when laying out its best-interest considerations, the juvenile court's journal entry tracked the language of R.C. 2151.414(D)(1). The journal entry continued that "one or more of the factors in division (E) of section 2151.414 of the Revised Code exist and the child cannot be placed with one of the child's parents within a reasonable period of time or should not be placed with either parent." The journal entry then stated that an award of permanent custody to the agency and termination of Mother's parental rights was in the child's best interest.

{¶ 45} The journal entry broadly states:

The child is abandoned by her father.

There are relatives of the child who are able to take permanent custody.

Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

The [Mother] has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two

or more times or refused to participate in further treatment two or more times after a case plan issued requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

The parents are unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

The parent has abandoned the child.

The parent has caused or allowed the child to suffer abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.

The child has special needs.

{¶ 46} As recharacterized, the relevant portions of the journal entry would correlate to findings under R.C. 2151.414(E)(1),(4),(9),(10),(14), and (16). However, notwithstanding the juvenile court's delineation above, we cannot say, after our review, that the record contains clear and convincing evidence that permanent custody to the agency is in G.W.'s best interest.

{¶ 47} Despite the juvenile court's delineated findings, we have been given reasons to pause. In our view, the critical testimony required to tip the scales in favor of taking away a parent's fundamental liberty interest is missing.

{¶ 48} We observe, the agency's motion for permanent custody and, indeed the central thrust at the dispositional hearing, was premised on Mother's failure to complete, to comply with, or to consistently engage in the objectives of the case plan. As previously noted, in response to agency's motion for permanent custody, Mother

filed a motion for legal custody of G.W., asserting that she was ready and able to care for her child and that she had substantially complied with the case plan services.

{¶ 49} Specifically asserted in the motion:

Mother represents that she has completed intensive-outpatient treatment at Signature Health, mental health treatment continues through Signature Health, previous engagement through Reavenwood while incarcerated, has completed consistent random drug screens through the probation department, and completed domestic violence classes through a previously approved online program. Mother also reports she is employed at Popeyes and has started a women's group that meets regularly on zoom.

Mother reports she continues to look for independent housing. While mother continues her ongoing search for independent housing, mother reports she has stable and appropriate housing with her mother (the child's maternal grandmother) SM. Previously, the agency had found SM's address sufficient to meet the child's needs. Mother represents that her daughter has her own room in her grandmother's home and she is able to reside there until she can move into independent housing.

Mother reports that she has been consistently visiting with the child on weekends at the maternal grandmother's home and some weekdays at her sister's home (current placement for the child).

{¶ 50} We recognize that compliance with a case plan is not, in and of itself, dispositive of the issue of reunification. *In re S.C.,* 8th Dist. Cuyahoga No. 102349, 2015-Ohio-2280, ¶ 40, citing *In re C.C.*, 187 Ohio App.3d 365, 2010-Ohio-780, 932 N.E.2d 360, ¶ 25 (8th Dist.); *In re J.B.*, 8th Dist. Cuyahoga Nos. 98566 and 98567, 2013-Ohio-1706, ¶ 139.

{¶ 51} However, in this particularly difficult case, we are troubled that the agency's case worker was unable to confirm whether Mother had completed, complied with, or was engaged in the case plan services. A clear indicium relates to the substance abuse component of the case plan. Both the agency and Mother agree

that the IOP was completed.  Then the paths diverged, with Mother claiming to have completed consistent random drug screens through the county's probation department.  However, as illuminated below, Eberhardt, who inherited Mother's case in August 2020, and was testifying almost a year later, was not armed with any current information on Mother's substance abuse compliance or lack thereof.

{¶ 52} The following exchange took place on the issue of the required random drug screening:

> Q. And with regard to urine screens you're aware that mother was — I apologize, your Honor.  That mother was getting screened routinely by the Probation Department?
>
> A. Correct.
>
> Q. Was it for the Cuyahoga County Probation Department?
>
> A. It was, but the last contact I had with the Probation Department I want to say was last year.
>
> Q. So the last time you spoke with probation was October of 2020?
>
> A. I can't recall the month, but I know it was sometime last year.
>
> Q. Okay. And you're aware that they had urine screens available on mother, correct?
>
> A. Correct.
>
> Q. But you had not reached out to them this year regarding that?
>
> A. I tried, but I couldn't get an updated release of information from mom which at our last –
>
> Q. So back in October did you ask for copies of the screens for probation last year when you spoke with the probation officer?
>
> A. Well, when I contacted him, yes, I did inquire about her drug screens.

Q. My question is did you receive a copy –

A. No, I did not.

Q. Okay. By completing random screens through probation wouldn't that show that she is maintaining sobriety?

A. Yes. However, she went to jail last year due to a probation violation.

Q. And that was in September, correct?

A. Yes.

Q. Now, you've already testified that you don't know mother's current status with regard to services since January of 2021, correct?

A. Correct.

{¶ 53} As reflected in the above excerpt, the case worker was aware that Mother was being randomly screened by the probation department of the same county as the agency yet failed to procure records that would either confirm Mother's compliance or lack thereof. Arguably, records that could have been procured without Mother signing a release. Notably, the last time Eberhardt was in contact with the probation department was approximately eight months prior to the hearing.

{¶ 54} Other parts of the record, not necessary to recite here, show the assigned case worker providing similar responses regarding other components of Mother's case plan. The responses were lacking in command of the current nature of Mother's compliance or lack thereof. Also, the responses did not rise to a level that would have refuted Mother's claims of substantial compliance.

{¶ 55} We are mindful that the case worker testified she lacked the proper release to obtain the necessary records. However, because of this critical information gap, we are not imbued with the firm belief or conviction to uphold this remedy of last resort. As stated previously, but worthy of underscoring, the termination of parental rights is "'the family law equivalent of the death penalty in a criminal case.'" *In re J.B.,* 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, at ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14.

{¶ 56} Following our review, we are unable to conclude, at this time, that the present record contains clear and convincing evidence that terminating Mother's parental rights and granting permanent custody to CCDCFS was in G.W.'s best interest. As such, we are constrained to conclude that the juvenile court's decision amounts to an abuse of discretion.

{¶ 57} Accordingly, we sustain the sole assignment of error.

{¶ 58} The juvenile court's judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
SEAN C. GALLAGHER, A.J., DISSENTS (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, A.J., DISSENTING:

{¶ 59} I respectfully dissent from the majority opinion and would affirm the decision of the juvenile court granting the agency's motion for permanent custody of G.W.

{¶ 60} A review of the record in this case reflects that the juvenile court's decision to grant the motion for permanent custody was not against the manifest weight of the evidence and that the juvenile court's decision was in the best interest of the child. When weighing the evidence, the reviewing court "must always be mindful of the presumption in favor of the finder of fact." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 21.

{¶ 61} While the majority opinion points to some lingering uncertainties about Mother's possible compliance with some aspects of the original case plan, those possible answers do not point to any component of the juvenile court's judgment that was not supported by clear and convincing evidence. In my view, even if Mother could show some period of sobriety through drug screens completed through the probation department, and even if efforts were made toward

compliance with some aspects of her case plan, the ultimate welfare of the child remains the controlling principle to be observed. *See In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 20, citing *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E. 2d 1034 (1974). After spending over two years in agency custody, G.W. requires permanency and a safe and secure environment.

{¶ 62} Although the record is perhaps less robust than it could be, it appears that this is largely a direct result of Mother's inconsistent engagement with, or disengagement from, her case plan services. Specifically, Mother failed to provide an updated release of information related to her mental health and substance abuse treatment — two of her case plan components — and was unresponsive to the agency worker's repeated attempts to contact her. Without undermining Mother's claims of progress in obtaining stable housing, receiving mental health treatment, and her sobriety, Mother had been unable to document extended and consistent sobriety throughout the duration of the case. Valid concerns remained given her lengthy history of substance abuse. Specifically, Mother self-reported that she had relapsed approximately seven months prior to the dispositional hearing. Additionally, at the time of the trial, G.W. was placed with a maternal relative and was receiving trauma-focused therapy and was "thriving" in this placement. In contrast, at the time of the trial, Mother was living with a relative and had not secured stable housing suitable for G.W.

{¶ 63} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody to the agency that filed the motion for permanent custody if it determines, "by clear

and convincing evidence, that it is in the best interest of the child" and that any of the conditions in R.C. 2151.414(B)(1)(a) through (e) apply. In this case, the trial court properly determined, and it is not disputed, that the condition set forth in R.C. 2151.414(B)(1)(d) applied, which requires that the child has been in the temporary custody for 12 or more months of a consecutive 22-month period.

{¶ 64} Therefore, the essential question is whether the trial court's best-interest determination is supported by clear and convincing evidence in the record. *See In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43. In the instant matter, the juvenile court made findings consistent with granting permanent custody under both R.C. 2151.414(D)(1) and (D)(2), which are alternative means for reaching the best-interest determination. *In re G.A.*, 8th Dist. Cuyahoga No. 108932, 2020-Ohio-2949, ¶ 61, citing *In re M.K.*, 10th Dist. Franklin No. 09AP-1141, 2010-Ohio-2194, ¶ 22.

{¶ 65} Pursuant to R.C. 2151.414(D)(1), "[i]n determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to" the enumerated best-interest factors. "R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires." *In re A.M.*, 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶ 31. A reviewing court must be able to discern from the juvenile court's decision that the court "consider[ed] the enumerated factors," but no express findings are required. *Id.* Also, "[t]here is not

one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56.

{¶ 66} Alternatively, pursuant to R.C. 2151.414(D)(2), if all four factors enumerated thereunder apply, "permanent custody is in the best interest of the child, and the court *shall* commit the child to the permanent custody" of the agency. (Emphasis added.) A finding under R.C. 2151.414(D)(2) mandates that the trial court find it is in the child's best interest to be placed in the agency's permanent custody. *In re A.S.*, 8th Dist. Cuyahoga Nos. 110422 and 110472, 2021-Ohio-3829, ¶ 42, citing *In re G.A.* at ¶ 59.

{¶ 67} In this case, the juvenile court's judgment entry reflects that the court specifically stated that it considered the factors under R.C. 2151.414(D)(1), which are set forth in the court's opinion. Additionally, the trial court determined that all the factors under R.C. 2151.414(D)(2) applied and made findings as to each of those factors. The trial court's findings are supported by clear and convincing evidence in the record. Therefore, the trial court's award of permanent custody to the agency should be upheld.

{¶ 68} For these reasons, I respectfully dissent.