[Cite as *In re G.W.*, 2022-Ohio-2581.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|   |   |   |
|---|---|---|
| IN RE G.W. | : | |
| | : | |
| Minor Child | : | No. 110938 |
| | : | |
| [Appeal by D.W., Mother] | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 28, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD18906317

---

## *Appearances:*

Christina J. Joliet, for *appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee*.

ON RECONSIDERATION[1]

EMANUELLA D. GROVES, J.:

{¶ 1} Appellant-mother ("Mother") appeals from the judgment of the Cuyahoga County Common Pleas Court, Juvenile Division, granting permanent custody of her minor child, G.W., to appellee, the Cuyahoga County Department of Children and Family Services ("CCDCFS" or the "agency").[2] For the reasons that follow, we affirm.

## Procedural and Factual History

{¶ 2} On May 14, 2018, CCDCFS filed a complaint alleging that G.W., born August 17, 2013, was a neglected, abused, and dependent child as defined by R.C. 2151.03(A)(3), 2151.031(B), and 2151.04(B). The complaint averred, in part, the following particulars:

1. Mother fails to provide a safe living environment for the child. Mother has failed to protect herself and child from a domestically violent boyfriend. Mother and a boyfriend have engaged in physical domestic violence in the presence of the child at least three times in the past four months and as recently as May 3, 2018.

2. Mother has untreated mental health issues which interfere with her ability to provide care for the child. Mother has been diagnosed with bipolar disorder and depression but is not engaged with services to address her mental health. Mother has failed to comply with a court-ordered mental health assessment.

---

[1] The original announcement of decision, *In re G.W.*, 8th Dist. Cuyahoga No. 110938, 2022-Ohio-1678, released May 19, 2022, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

[2] The child's father, C.E. ("Father"), is not a party to this appeal, but will be referenced in the discussion to provide context.

3. Mother has two criminal convictions for driving while under the influence of alcohol. Mother has a criminal conviction for child endangering due to G.W. being a passenger in the vehicle during one of these incidents. Mother has unresolved matters before the Cleveland Municipal Court and the Berea Municipal Court due to non-payment.

4. Mother uses marijuana while being the sole caregiver for the child. Mother has been referred to multiple substance abuse assessments but has failed to comply.

5. Father, C.E. ("Father"), has failed to support, visit, or communicate with the child on a consistent basis and has had minimal involvement with the child since birth.

{¶ 3} Along with the complaint, CCDCFS filed a motion for predispositional temporary custody of G.W. to the agency. In support, the agency indicated that G.W. was then in the care of a maternal aunt pursuant to a safety plan that was executed on May 4, 2018, and set to expire on June 4, 2018. The juvenile court granted predispositional temporary custody to CCDCFS.

{¶ 4} The agency developed and filed a case plan to assist Mother in remedying the issues that led to CCDCFS' involvement. To address Mother's mental health and substance-abuse issues, the agency required Mother to complete a mental-health assessment, engage in counseling, and be compliant with all medications. To address the domestic violence concerns, the agency required Mother to participate in domestic violence classes.

{¶ 5} Additionally, to address Mother's housing issue, the agency required Mother to maintain stable, safe, and appropriate housing for herself and G.W. Further, the case plan included counseling for G.W., who had witnessed ongoing domestic violence in the home between Mother and Mother's boyfriend. Finally, to

address the agency's concern that Father had not established a relationship with G.W., the case plan required that Father establish a parent-child relationship with G.W. and make arrangements to begin providing financial support

{¶ 6} At a hearing on July 3, 2018, Mother denied the allegations in the complaint. The juvenile court referred Mother to the public defender's office for legal assistance. The juvenile court also held in abeyance a motion filed by the agency for temporary custody and ordered that G.W. remain in the placement with the maternal aunt.

{¶ 7} On August 9, 2018, at an adjudicatory hearing, Mother again denied the allegations of the agency's complaint. After hearing testimony, the juvenile court found the allegations were proven by clear and convincing evidence and proceeded to adjudicate G.W. abused and dependent. The juvenile court also found that "the child's continued residence in or return to [D.W.], Mother will not be contrary to the child's best interest." In addition, the juvenile court ordered that upon verification of Mother's current housing, G.W. shall be returned to Mother and reside with her at the domestic violence shelter.

{¶ 8} On October 9, 2018, CCDCFS filed a motion to amend its previously filed motion for predispositional temporary custody to agency, to that of legal custody to Mother, with protective supervision. In the brief in support, CCDCFS stated it believed the prayer for relief was the disposition that was in G.W.'s best interest. After a hearing held January 16, 2019, the juvenile court placed G.W. in the protective supervision of CCDCFS. The juvenile court also approved an

amended case plan requiring that Mother complete drug and alcohol assessments, comply with substance-abuse treatment recommendations, and submit to random drug tests. In addition, the juvenile court found that the permanency plan for the child was legal custody to Mother.

{¶ 9} On May 6, 2019, CCDCFS filed a motion for first extension of protective supervision, noting that the then order would be expiring on May 13, 2019. In the brief in support, CCDCFS stated:

> Mother has completed the following requirements: obtained and maintained safe and stable housing, is able to provide for the child's basic needs, and completed an AOD assessment. However, Mother has not completed the following objectives of the case plan: a recommended intensive out-patient treatment program ("IOP"), requested drug screens, the recommended mental health and domestic violence services.

Following a hearing held on June 5, 2019, the juvenile court granted the agency's motion.

{¶ 10} On July 1, 2019, CCDCFS filed a motion to modify protective supervision to temporary custody. In the affidavit filed in support of the agency's motion, caseworker Norma De Jesus ("De Jesus") averred that, on June 29, 2019, Mother and child were involved in a car accident, resulting in injuries to both. De Jesus also averred that Mother was driving while severely intoxicated and that G.W. was not properly restrained in the car. After a hearing, the juvenile court found there was probable cause for removal of G.W. from Mother's care and that there was not a suitable relative, who was willing to be a temporary custodian. Thus, the juvenile court committed G.W. to the emergency care and custody of the agency.

**{¶ 11}** At a hearing on September 23, 2019, Mother agreed to the agency's motion to modify protective supervision to temporary custody. By journal entry, dated October 21, 2019, the juvenile court granted the agency's motion for temporary custody.

**{¶ 12}** On May 28, 2020, CCDCFS filed a motion to modify temporary custody to legal custody to G.W.'s maternal grandmother, S.M. In support of the motion, CCDCFS noted that prior to filing the motion, the agency developed a case plan to facilitate reunification, but Mother had failed to complete the objectives. CCDCFS also noted that the agency referred Mother for mental health, domestic violence, and substance-abuse services, but Mother was not compliant. In addition, CCDCFS noted that Mother did not have safe, stable housing, and was not compliant with the terms of her probation to the Cuyahoga County Court of Common Pleas. CCDCFS further noted that G.W.'s maternal grandmother was able to provide for the child's daily needs and was willing to provide a permanent home.

**{¶ 13}** On November 2, 2020, CCDCFS filed a motion to amend its prior motion for legal custody to the maternal grandmother to a motion for permanent custody. In support of the motion, CCDCFS asserted that the condition listed in R.C. 2151.414(B)(1) existed. Specifically, that G.W. had been in the temporary custody of the agency for twelve or more months of a consecutive twenty-two-month period. In the affidavit filed in support of the agency's motion, caseworker Rayshawn Eberhardt ("Eberhardt") averred in pertinent part, as follows:

\* \* \*

2. The child was committed to the pre-dispositional temporary custody of CCDCFS on July 1, 2019

3. The child was adjudicated abused and dependent on September 10, 2018,

4. The child was committed to the temporary custody of CCDCFS on October 25, 2019.

5. A case plan was filed with Juvenile Court and approved which required that mother complete a substance abuse assessment and comply with treatment recommendations, comply with random drug screens, comply with mental health treatment and prescribed medication, complete domestic violence classes, maintain stable and appropriate housing, and maintain the ability to meet the child's basic needs.

6. Mother completed a substance abuse assessment and was recommended for IOP. Mother failed to comply with the substance abuse treatment recommendations and has failed to comply with random drug screens.

7. Mother had failed to consistently comply with mental health treatment.

8. Mother had not visited or communicated with the child since on or about August 2020.

{¶ 14} In response, on July 13, 2021, Mother filed a motion for legal custody of G.W., asserting that she was ready and able to have physical care of G.W. and that she had substantially complied with the case plan services.

{¶ 15} On July 20, 2021, the juvenile court held a dispositional hearing.

**Dispositional Hearing**

{¶ 16} At the hearing, CCDCFS presented the testimony of Eberhardt, who testified in conformity with the above affidavit she provided in support of the

agency's motion for permanent custody. Eberhardt, who inherited the case in August 2020, testified that the case's history revealed that Mother had not made significant progress with the developed case plan and that Mother was inconsistent in her engagement.

{¶ 17} Eberhardt testified that although Mother had completed a mental-health assessment, Mother failed to follow through with individual counseling and that by the time of the hearing, Mother's compliance with the mental health component was unknown. Eberhardt explained that Mother failed to provide an updated release to permit the provider to communicate with the agency. Eberhardt noted that she made several efforts to meet with Mother to obtain the release, but none ultimately successful.

{¶ 18} Eberhardt testified about the substance abuse component, noting that Mother completed an IOP, began aftercare, and tried to maintain sobriety, but that, as of December 2020, Mother had failed to submit to any of the agency's random drug screens. Eberhardt also noted that in December 2020, Mother self-reported that she had relapsed.

{¶ 19} Eberhardt testified that Mother failed to complete the domestic violence program the agency recommended, opting instead to complete an eight-hour domestic violence class online. Eberhardt testified that the agency deemed the online program insufficient, because of Mother's long history of being in domestic violent relationships. Eberhardt explained that the agency requested, and the provider agreed, to combine the domestic violence mental health components.

{¶ 20} Eberhardt testified that the agency referred Mother to the Community Collaborative for assistance with her housing needs. Eberhardt stated that towards the latter part of 2020, Mother did have independent housing, but at the time of the trial, Mother still lacked stable housing.

{¶ 21} Eberhardt testified she found it difficult to coordinate supervised visits between Mother and G.W. Eberhardt stated that because Mother was not consistent, the visits never became unsupervised. Eberhardt noted that G.W. enjoyed the visits with Mother.

{¶ 22} Eberhardt testified that Mother was initially responsive to her encouragement to engage in the case plan, but then later it became increasingly difficult to reach Mother either by phone calls or by texts. Eberhardt noted being able to reach Mother sporadically and eventually discovering that Mother had been jailed, because of a probation violation.

{¶ 23} Eberhardt testified that G.W. was residing with a maternal aunt and was receiving trauma-focused therapy. G.W.'s basic needs were being met and she was thriving in the placement with the maternal aunt. Eberhardt explained that the agency had planned to place G.W. with the maternal grandmother, but those plans fell apart, when the maternal grandmother indicated that, based on her work schedule, she would not be able to meet G.W.'s basic needs. Eberhardt noted that the maternal grandmother offered that G.W.'s maternal aunt would be the best person to care for the child and ensure that all needs were met.

{¶ 24} Eberhardt opined that returning G.W. to mother would not serve the child's best interest and recommended that the juvenile court grant the agency's motion for permanent custody.

{¶ 25} Thereafter, the juvenile court continued the proceedings, which reconvened on September 17, 2021. At that time, G.W.'s guardian ad litem, Tom Kozel, (the "GAL"), who previously filed a written report, orally recommended that permanent custody be granted to the agency. The GAL noted that G.W. had been in the agency's custody beyond two years, that Mother had not been able to document extended sobriety, and that the agency's concern about Mother's mental health issues remained. In addition, the GAL noted that Mother had not procured safe and stable housing throughout the history of the case. Finally, the GAL noted that G.W. was in a home, with a relative that was committed to caring for the child.

{¶ 26} On October 4, 2021, the juvenile court journalized an entry terminating all parental rights and granting permanent custody to the agency.

{¶ 27} Mother now appeals and raises the following sole assignment of error for our review:

### Assignment of Error

The trial court's order granting permanent custody to the agency was not based upon sufficient clear and convincing evidence, was against the manifest weight of the evidence and it erred in finding permanent custody to be in the best interest of the child.

### Law and Analysis

{¶ 28} In her sole assignment of error, Mother argues the juvenile court erred in granting permanent custody to the agency because the decision is not

supported by clear and convincing evidence, is against the manifest weight of the evidence, and not in G.W.'s best interest. Specifically, Mother maintains that she substantially engaged in the objectives of the case plan.

{¶ 29} At the outset, we note, it is well established that a parent has a fundamental right to raise and care for his or her child. *In re L.M.*, 8th Dist. Cuyahoga No. 106072, 2018-Ohio-963, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28; *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 40. We recognize that termination of parental rights is "the family law equivalent of the death penalty in a criminal case." *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, citing *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14.

{¶ 30} An appellate court will not reverse a juvenile court's decision awarding permanent custody to an agency if the judgment is supported by clear and convincing evidence. *In re J.M-R.*, 8th Dist. Cuyahoga No. 98902, 2013-Ohio-1560, ¶ 28. "Clear and convincing evidence" is that measure or degree of proof that is more than a "preponderance of the evidence," but does not rise to the level of certainty required by the "beyond a reasonable doubt" standard in criminal cases. *In re K.S.*, 8th Dist. Cuyahoga No. 109928, 2021-Ohio-694, ¶ 15, citing *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 8, citing *In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994), citing *Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176, 180-181, 512 N.E.2d 979 (1987). It

"produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re K.S.* at ¶ 15, citing *In re M.S.* at ¶ 18.

{¶ 31} Therefore, we examine the record to determine whether the juvenile court had sufficient evidence to meet the required degree of proof. "Judgments supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence." *In re L.W.*, 8th Dist. Cuyahoga No. 107708, 2019-Ohio-1343, at ¶ 24, citing *In re T.S.*, 8th Dist. Cuyahoga No. 92816, 2009-Ohio-5496, ¶ 24, citing *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990).

{¶ 32} The termination of parental rights is governed by R.C. 2151.414. *In re M.H.*, 8th Dist. Cuyahoga No. 80620, 2002-Ohio-2968, ¶ 22. R.C. 2151.414 sets forth a two-part test courts must apply when deciding whether to award permanent custody to a public services agency.

### First Prong: R.C. 2151.414(B)(1)(a)-(e)

{¶ 33} Under the first prong, the juvenile court must find by clear and convincing evidence one of the following five factors:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated and abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(a)-(e).

{¶ 34} Only one of the factors must be present for the first prong of the permanent custody analysis to be satisfied. *In re S.S.*, 8th Dist. Cuyahoga No. 109356, 2020-Ohio-3039, ¶ 28, citing *In re L.W.*, 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657, ¶ 28.

{¶ 35} In this matter, the juvenile court determined that the condition set forth in R.C. 2151.414(B)(1)(d) applied. We note, R.C. 2151.414(B)(1)(d) permits a public children services agency to move for permanent custody of a child if, at the time the agency files its permanent custody motion, the child has been in the agency's temporary custody for twelve or more months of a consecutive twenty-two-month period. *See In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 26 (construing R.C. 2151.414(B)(1)(d) and explaining that before children

services agency can seek permanent custody under R.C. 2151.414(B)(1)(d), the child must have been in agency's temporary custody for at least twelve months before the agency files a permanent custody motion).

{¶ 36} We further note, the time-period for R.C. 2151.414(B)(1)(d) is calculated from when the child enters custody of the agency and the filing of the motion for permanent custody. *In re J.C.*, 8th Dist. Cuyahoga No. 106272, 2018-Ohio-2234, ¶ 29, citing *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 26.

{¶ 37} The juvenile court's October 4, 2021, judgment stated in relevant part that "the child, has been in temporary custody of a public children services agency or private child placing agency for twelve or more months of a consecutive twenty-two-month period." Mother does not dispute the juvenile court's finding under R.C. 2151.414(B)(1)(d). Indeed, the record established that at the time CCDCFS filed its motion for permanent custody, on November 30, 2020, G.W. had been in the agency's temporary custody for approximately 16 months for purposes of R.C. 2151.414(B)(1). Consequently, the juvenile court's finding that R.C. 2151.414(B)(1)(d) applied is clearly and convincingly supported by the record.

{¶ 38} We point out, when R.C. 2151.414(B)(1)(d) applies, the trial court is not required to make any other finding and can immediately proceed to the best-interest determination. *In re L.W.*, 8th Dist. Cuyahoga No. 107708, 2019-Ohio-1343, ¶ 26, citing *In re T.H.*, 8th Dist. Cuyahoga No. 100852, 2014-Ohio-2985, ¶ 18; *J.C.* at *id.*

{¶ 39} Because the juvenile court's finding under R.C. 2151.414(B)(1)(d) is clearly and convincingly supported by the record, the first prong of the permanent custody analysis is satisfied in this case.

## Second Prong:  R.C. 2151.414(D)

{¶ 40} The second prong also requires the juvenile court to find by clear and convincing evidence that granting permanent custody to the agency is in the best interest of the child.  Here, we review a trial court's best-interest determination under R.C. 2151.414(D) for an abuse of discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47.  In this regard, "'[a] trial court's failure to base its decision on a consideration of the best interests of the child constitutes an abuse of discretion.'" *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 60.  "An abuse of discretion is more than a mere error of law or judgment; it implies that the court's decision was unreasonable, arbitrary, or unconscionable."  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 41} In the instant matter, the juvenile court made findings consistent with granting permanent custody under both R.C. 2151.414(D)(1) and (D)(2), which are alternative means for reaching the best-interest determination.  *In re G.A.*, 8th Dist. Cuyahoga No. 108932, 2020-Ohio-2949, ¶ 61, citing *In re M.K.*, 10th Dist. Franklin Nos. 09AP-1141 and 09AP-1142, 2010-Ohio-2194, ¶ 22.

{¶ 42} R.C. 2151.414(D)(1) sets forth best-interest factors that the court must consider when making the best-interest determination under R.C. 2151.414(D)(1), including

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child * * *;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 43} The juvenile court has considerable discretion in weighing these factors. *In re D.A.* at ¶ 47. Although a trial court is required to consider each relevant factor under R.C. 2151.414(D)(1) in making a determination regarding permanent custody, "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Moreover, "[R.C. 2151.414(D)(1)] requires a weighing of all the relevant factors * * * [and] requires the court to find the best option for the child * * *." *Id.* at ¶ 64.

{¶ 44} In this matter, we begin our inquiry into the second prong by observing that the juvenile court's judgment entry reflects that the court expressed that it considered the factors under R.C. 2151.414(D)(1). The journal entry continued that "one or more of the factors in division (E) of section 2151.414 of the

Revised Code exist and the child cannot be placed with one of the child's parents within a reasonable period of time or should not be placed with either parent."

**{¶ 45}** Specifically, that

[t]he child is abandoned by her father.

There are relatives of the child who are able to take permanent custody.

Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

The [Mother] has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

The parents are unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

The parent has abandoned the child.

The parent has caused or allowed the child to suffer abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.

The child has special needs.

{¶ 46} As recharacterized, the relevant portions of the journal entry would correlate to findings under R.C. 2151.414(E)(1)(4)(9)(10)(14) and (16). Additionally, the trial court determined that all the factors under R.C. 2151.414(D)(2) applied. R.C. 2151.414(D)(2) states:

> If all of the following apply, permanent custody is in the best interest of the child, and the court shall commit the child to the permanent custody of a public children services agency or private child placing agency:
>
> (a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.
>
> (b) The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code.
>
> (c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.
>
> (d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

{¶ 47} Critically, pursuant to R.C. 2151.414(D)(2), if all four factors enumerated thereunder apply, "permanent custody is in the best interest of the child, and the court *shall* commit the child to the permanent custody" of the agency. (Emphasis added.) A finding under R.C. 2151.414(D)(2) mandates that the trial court find it is in the child's best interest to be placed in the agency's permanent custody. *In re A.S.*, 8th Dist. Cuyahoga Nos. 110422 and 110472, 2021-Ohio-3829, ¶ 42, citing *In re G.A.* at ¶ 59.

{¶ 48} In these difficult matters, the ultimate welfare of the child remains the controlling principle to be observed. *See In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 20, citing *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E. 2d 1034 (1974).

{¶ 49} Based on the foregoing, the juvenile court did not err in granting the agency's motion for permanent custody. The decision was not against the manifest weight of the evidence, was in the best interest of the child, and was supported by clear and convincing evidence.

{¶ 50} Accordingly, we overrule the sole assignment of error.

{¶ 51} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
SEAN C. GALLAGHER, A.J., CONCURS (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, A.J., CONCURRING:

{¶ 52} Although I agree with the majority that the judgment of the juvenile court should be affirmed, I write to further address the statutory framework under R.C. 2151.414 and the juvenile court's determination that granting permanent custody to CCDCFS is in the best interest of the child.

{¶ 53} Although it is well established that the right to parent one's child is a fundamental right, the government has broad authority to intervene to protect children from abuse and neglect. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28, citing *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); R.C. 2151.01. Ultimately, the natural rights of a parent are always subject to the ultimate welfare of the child, which is the controlling principle to be observed. *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 20, citing *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 54} In Ohio, the authority to terminate parental rights is carefully circumscribed by statute. *See In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 41-42. The Supreme Court of Ohio has recognized that "R.C. 2151.414 sets out specific findings a juvenile court must make before granting an agency's motion for permanent custody of a child." *In re A.M.*, 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶ 18, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 22. As applicable here, R.C. 2151.414(B)(1) requires a juvenile court to determine, "by clear and convincing evidence, that it is in the best interest

of the child to grant permanent custody of the child to the agency" and that any of the conditions set forth in R.C. 2151.414(B)(1)(a) through (e) apply.

{¶ 55} In this case, the juvenile court properly found that the child has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period, and it is not disputed that the condition set forth in R.C. 2151.414(B)(1)(d) applies. Therefore, the essential question is whether the trial court's best-interest determination is supported by clear and convincing evidence in the record. *See In re K.H.* at ¶ 43. To this end, R.C. 2151.414(D)(1) and (D)(2) provide alternative means for reaching the best-interest determination. *In re G.A.*, 8th Dist. Cuyahoga No. 108932, 2020-Ohio-2949, ¶ 61, citing *In re M.K.*, 10th Dist. Franklin No. 09AP-1141, 2010-Ohio-2194, ¶ 22.[3]

{¶ 56} Pursuant to R.C. 2151.414(D)(1), "[i]n determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to" the enumerated best-interest factors. "There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. The statute requires the juvenile court to weigh all relevant factors and to find the best option for the child. *Id.* at ¶ 64. In doing so, "R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires." *In re A.M.* at ¶ 31. However, a reviewing

---

[3] "An agency that seeks permanent custody of a child bears the burden of proving by clear and convincing evidence that the grant of permanent custody is in the child's best interest." *In re A.M.* at ¶ 19, citing *In re B.C.* at ¶ 26.

court must be able to discern from the juvenile court's decision that it "consider[ed] the enumerated factors," and a discussion of the best-interest factors is strongly encouraged to facilitate appellate review. *Id.* at ¶ 31-32.

{¶ 57} Alternatively, pursuant to R.C. 2151.414(D)(2), if all four factors enumerated thereunder apply, "permanent custody is in the best interest of the child, and the court *shall* commit the child to the permanent custody" of the agency. (Emphasis added.) When all four factors are met, R.C. 2151.414(D)(2) mandates that the court find it is in the child's best interest to be placed in the agency's permanent custody. *In re A.S.*, 8th Dist. Cuyahoga Nos. 110422 and 110472, 2021-Ohio-3829, ¶ 42, citing *In re G.A.* at ¶ 59.

{¶ 58} In this case, the juvenile court specifically stated in its judgment entry that it considered the factors under R.C. 2151.414(D)(1), which are set forth in the court's opinion. Although Mother takes issue with the juvenile court's consideration of these factors, "[i]n weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 21. Despite Mother's claims that the agency failed to make sufficient efforts to facilitate visitation, to obtain updated records, and to contact Mother, the record contains evidence showing Mother was often nonresponsive or unavailable and had inconsistent engagement with, or disengagement from, her case plan services. Specifically, Mother failed to provide an updated release of information related to her mental health and substance abuse treatment — two of her case plan components — and was unresponsive to the agency

worker's repeated attempts to contact her. Without undermining Mother's claims of progress in obtaining stable housing, receiving mental health treatment, and her sobriety, Mother had been unable to document extended and consistent sobriety throughout the duration of the case. Valid concerns remained given her lengthy history of substance abuse. Specifically, Mother self-reported that she had relapsed approximately seven months prior to the dispositional hearing. Further, even if Mother could show some period of sobriety through drug screens completed through the probation department, and even if efforts were made toward compliance with some aspects of her case plan, the ultimate welfare of the child remains the controlling principle to be observed. *See In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, at ¶ 20, citing *In re Cunningham*, 59 Ohio St.2d 100, at 106, 391 N.E.2d 1034. At the time of the trial, G.W. was placed with a maternal relative and was receiving trauma-focused therapy and was "thriving" in this placement. In contrast, at the time of the trial, Mother was living with a relative and had not secured stable housing suitable for G.W. After spending over two years in agency custody, G.W. requires permanency and a safe and secure environment.

{¶ 59} Notwithstanding the court's consideration of the best-interest factors pursuant to R.C. 2151.414(D)(1), because the juvenile court determined that all the factors under R.C. 2151.414(D)(2) applied, permanent custody was necessarily in the best interest of the child and the juvenile court was required to grant permanent custody to the agency. *See In re P.J.*, 8th Dist. Cuyahoga No. 110121, 2021-Ohio-1821, ¶ 24. As discussed in the majority opinion, the juvenile court made findings

as to each of the R.C. 2151.414(D)(2) factors, and relevant to subsection (D)(2)(a), it found multiple factors under R.C. 2151.414(E) to exist. The juvenile court's findings are supported by clear and convincing evidence in the record, and Mother fails to demonstrate otherwise. The juvenile court satisfied its statutory duty in this case. Accordingly, the juvenile court's decision to grant permanent custody to the agency must be upheld.