[Cite as *In re J.D.*, 2025-Ohio-1839.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE J.D. | : | |
| | : | No. 114698 |
| Minor Child | : | |
| | : | |
| [Appeal by Father] | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 22, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD23911075

---

### *Appearances:*

Gregory T. Stralka, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee*, Cuyahoga County Division of Children and Family Services.

EMANUELLA D. GROVES, J.:

{¶ 1} Appellant-father ("Father") appeals the Cuyahoga County Juvenile Court's (the "juvenile court") judgment terminating his parental rights to his child J.D. (d.o.b. Sept. 19, 2023) and awarding permanent custody to the Cuyahoga

County Division of Children and Family Services ("CCDCFS" or the "agency"). For the reasons that follow, we affirm the decision of the juvenile court.

**Factual and Procedural History**

{¶ 2} On September 25, 2023, the agency requested by telephone, pursuant to Juv.R. 6(A)(4), an ex parte order to take custody of the child. The juvenile court granted the request finding that J.D.'s mother ("Mother") had a long-standing issue with substance abuse and that she tested positive for cocaine at the time of the child's birth.[1] The juvenile court further found that Mother left the hospital two days after J.D.'s birth and never returned to visit the child. The juvenile court ordered that J.D. be placed in the emergency temporary custody of her maternal aunt and uncle (the "maternal relatives").

{¶ 3} On September 26, 2023, the agency filed a complaint alleging that J.D. was dependent and requesting legal custody be granted to her maternal relatives. The complaint reiterated the issues raised in the ex parte order about Mother. The complaint also alleged that Father had substance-abuse issues. Furthermore, the complaint alleged that Mother had four children who were removed from her care; adjudicated by the juvenile court, in part due to her substance-abuse history; and placed into the legal custody of relatives. Although not specifically referenced in the complaint, the record shows that two of those children were Father's. The complaint merely stated in reference to those children that Father had two children who were

---

[1] Mother did not appeal the permanent-custody decision; accordingly, we will only touch on aspects of her case that are relevant to Father's appeal.

removed from his care for the same reasons. At a hearing held on the same day, the juvenile court placed J.D. in emergency temporary custody of her maternal relatives.

{¶ 4} A little over a month after J.D. was placed, she suffered a "non-accidental" skull fracture. As a result, the agency petitioned to remove J.D. from the maternal relatives' home and place her in the emergency temporary custody of CCDCFS. The agency amended its complaint to request that J.D. be placed in the custody of CCDCFS. On December 18, 2023, J.D. was adjudicated dependent and placed in the temporary custody of the agency. Father was present in court and agreed to the disposition. A case plan was developed for both Father and Mother, with the same goals: address substance-abuse and mental-health issues and acquire stable housing.

{¶ 5} On May 1, 2024, the agency filed a motion to modify the disposition from temporary custody to permanent custody. A trial was held on December 12, 2024. Since Father was incarcerated for a probation violation, he attended the trial via Zoom. Mother did not appear at trial.[2]

{¶ 6} The agency called Aimee Collins ("Collins"), the CCDCFS caseworker assigned to J.D.'s case in November or December 2023. Per Collins, the agency became involved when they were notified that J.D. was prenatally exposed to cocaine and tested positive for the drug at birth. Collins explained that J.D. was

---

[2] Mother's attorney told the court that he had spoken to Mother that morning, but she was sick and was seeking a continuance. The juvenile court denied the request after the agency noted Mother had stopped visiting the child in June and that she had only appeared at one previous court hearing.

initially placed with her maternal relatives. However, she was removed from the family placement and transferred to a foster home after suffering a brain hemorrhage and skull fracture at five weeks old.

{¶ 7} Collins next reviewed Mother's history, noting that she had not completed case-plan objectives and tested positive for cocaine in April 2024, which was the last time Mother participated in any testing. Mother also did not make any progress on her mental-health or housing goals.

{¶ 8} Collins further testified that Father's case-plan objectives included substance abuse, mental health, and housing. The agency referred Father to the Salvation Army, Ethan's Crossing, Matt Talbot, and Y-Haven for both substance-abuse and mental-health services. Collins explained that the Salvation Army would not admit Father, who was 70 years old, because of his age. Father called Matt Talbot, but they informed him that he would not be admitted due to an active warrant. He was then referred to Y-Haven but elected to go to the City Mission program in August 2024. Father began their intensive outpatient program; however, he was arrested approximately two weeks after entry into the program.

{¶ 9} In addition, Collins reported that Father was required to submit to drug tests as part of his case-plan objectives. On April 12, 2024, he tested positive for cocaine. Collins spoke to Father about the results, and he admitted that he used cocaine to "save" Mother, who continued to abuse drugs. Accordingly, Collins testified that Father did not complete the substance-abuse and mental-health

portions of his case plan. Collins noted that if Father reengaged in services, he would have to start from the beginning.

{¶ 10} With respect to housing, Collins advised that Father never had stable housing during the pendency of the case. Father reported in the past he lived with his mother and brother; however, it was not a permanent living arrangement, and he would not be able to bring J.D. there. Collins noted that the City Mission would have assisted with housing, but Father did not complete the program.

{¶ 11} According to Collins, Father's charges were also a concern. The record reflects that in 2021, Father was accused of sexual assault against Mother's oldest child who was six years old at the time of the alleged offense.[3] Father entered a negotiated guilty plea to one count of gross sexual imposition, a felony of the fourth degree, and one count of endangering children, a misdemeanor of the first degree. Father was sentenced to a period of community control in 2023.[4]

{¶ 12} Collins testified that both parents visited J.D. inconsistently between April and June 2024. During the visits, Mother would often "doze off" and both parents would leave as soon as J.D. fell asleep. Collins advised that J.D.'s parents stopped visits around the end of June or the beginning of July. At the time of the trial, Father had not visited J.D. in five months.

---

[3] CCDCFS introduced certified copies of Father's convictions into evidence.

[4] Father was also designated a Tier 1 sex offender.

{¶ 13} With respect to J.D., Collins reported that she was well adjusted and bonded in her foster home. Collins explained that J.D. has extensive special needs that require her to take seizure medications. Also, J.D. was diagnosed with hearing loss in both ears and vision deficits. The agency was in the process of obtaining hearing aids and glasses for her at the time of the hearing. Additionally, J.D. was engaged in physical, occupational, and feeding therapy. Collins testified that the parents were not involved with J.D.'s medical appointments or her specialized care. Further, Collins believed that neither Mother nor Father could presently provide a safe, stable, and permanent home for J.D. Further, she did not believe they could achieve that goal in a reasonable amount of time.

{¶ 14} Finally, Collins testified that the agency investigated several relatives for possible placement. First, CCDCFS contacted Father's brother and sister. However, the sister never returned the agency's call and the brother did not believe he was capable of meeting J.D.'s special needs. The agency then interviewed one of Father's sons and one of his daughters. The son was also concerned he would not be able to meet J.D.'s special needs. The daughter was denied placement because she minimized the parents' substance-abuse issues. Finally, Father's 19-year-old granddaughter expressed an interest in obtaining custody of J.D.; however, she was too young to become a licensed foster parent.

{¶ 15} After the agency rested its case, Father did not present any evidence. J.D.'s guardian ad litem ("GAL") recommended permanent custody, noting that

although Father loved the child and had expressed a desire to work on case-plan objectives, he had not made significant progress towards those goals.

{¶ 16} The juvenile court granted the agency's motion for permanent custody. The court noted that it made its findings based on R.C. 2151.414(B)(1)(a) and 2151.414(E)(1), (2), (4), (5), (6), (10), (14), and (16).

{¶ 17} Father now appeals and assigns the following error for our review:

### Assignment of Error

The Department of Children and Family Services failed to establish that permanent custody should be granted under any of the provisions of the Ohio Revised Code 2151.414(E).

## Law and Analysis

## Standard of Review

{¶ 18} "[W]hen reviewing a court's award of permanent custody and termination of parental rights, 'the proper appellate standards of review to apply. . . are the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, as appropriate depending on the nature of the arguments that are presented by the parties' rather than the abuse-of-discretion standard." *In re T.C.*, 2024-Ohio-6131, ¶ 32 (8th Dist.), quoting *In re Z.C.*, 2023-Ohio-4703, ¶ 18.

{¶ 19} R.C. 2151.414(B)(1) provides that a juvenile court may grant permanent custody to a children services agency if the court determines, "'by clear and convincing evidence, that [the placement] is in the best interest of the child, and that one of the five factors listed in R.C. 2151.414(B)(1)(a) through (e) applies.'" *In re Z.C.* at ¶ 7, quoting R.C. 2151.414(B)(1). We will not "reverse a juvenile court's

termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." *In re M.J.*, 2013-Ohio-5440, ¶ 24 (8th Dist.).

{¶ 20} "It is well established that a parent has a fundamental right to raise and care for his or her child." *E.g., In re V.C.* 2015-Ohio-4991, citing ¶ 35 (8th Dist.). "The right to parent one's children and maintain and pursue intimate familial associations are fundamental rights guaranteed by the Due Process Clause of the United States Constitution." *In re J.W.*, 2007-Ohio-2007, ¶ 13 (10th Dist.). The termination of parental rights has been described as "the family law equivalent of the death penalty in a criminal case." *E.g.*, *In re V.C.*, at ¶ 35.

{¶ 21} "[T]he United States Supreme Court holds that before any court may completely and irrevocably sever a parent's rights in their natural child, 'due process requires that the State support its allegations by at least clear and convincing evidence.'" *In re J.W.*, at ¶ 14, quoting *Santosky v. Kramer*, 455 U.S. 745, 747-748 (1982).

{¶ 22} "Clear and convincing evidence is that measure or degree of proof, which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954), *e.g.*, *In re K.S.*, 2021-Ohio-694, ¶ 15 (8th Dist.). It is "more than a mere preponderance" but not the level of certainty to establish proof beyond a reasonable doubt as in criminal cases. *Id.* "'Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier

of facts had sufficient evidence before it to satisfy the requisite degree of proof.'" *In re Z.C.*, 2023-Ohio-4703 at ¶ 8, quoting *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990).

**Permanent Custody**

{¶ 23} "The termination of parental rights is governed by R.C. 2151.414." *In re G.W.*, 2022-Ohio-2581, ¶ 32 (8th Dist.). Courts must apply a two-part test when deciding whether to award permanent custody to a children's services agency. *Id.* The first prong tests whether factors are present, which warrant the termination of parental rights. *Id.* at ¶ 33. The second prong requires the juvenile court to determine whether granting permanent custody to the agency is in the best interest of the child. *Id.* at ¶ 40. In the instant case, Father only challenges the first prong of the permanent-custody test. Accordingly, we will limit our review to that section of the test.

**R.C. 2151.414(B)(1)(a)-(e)**

{¶ 24} Under the first prong of permanent custody analysis, the juvenile court must find that any of the following applies:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another State.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this State or another State.

{¶ 25} Here the juvenile court found that R.C. 2151.414(B)(1)(a) applied. Under that section, the juvenile court can place a child in the permanent custody of the agency when the child has not been in the temporary custody of the agency for 12 months of a consecutive 22-month period and the court determines that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents.

{¶ 26} Father does not challenge the trial court's findings under the first part of R.C. 2151.414(B)(1)(a) regarding the amount of time J.D. was in temporary custody of the agency. Rather, Father limits his challenge to whether the trial court appropriately found that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. Notably, if a trial court finds any one of the factors in R.C. 2151.414(E)(1) through (16), the "court shall enter

a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents." R.C. 2151.414(E). Specifically, a juvenile court "is only required to find that one of [the R.C. 2151.414(E)] factors is met in order to properly find that a child cannot or should not be placed with a parent." *In re Ca.T.*, 2020-Ohio-579, ¶ 27 (8th Dist.), citing *In re V.C.,* 2015-Ohio-4991 at ¶ 42.

{¶ 27} In the instant case, the juvenile court made multiple findings under R.C. 2151.414(E) as follows:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
>
> (2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
>
> (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
>
> (5) The parent (Father) is incarcerated for an offense committed against the child or a sibling of the child;

(6) The parent (Father) has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section 2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.05, 2907.07, 2907.08, 2907.09, 2907.12, 2907.23, 2907.25, 2907.31, 2907.32, 2907.321, 2907.322, 2907.323, 2911.01, 2911.02, 2911.11, 2911.12, 2919.12, 2919.24, 2919.25, 2923.12, 2923.13, 2923.161, 2925.02, or 3716.11 of the Revised Code, and the child or a sibling of the child was a victim of the offense, or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.

(10) The parent has abandoned the child.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

(16) Any other factor the court considers relevant: Mother has only made one appearance in Court on this matter, which was in August 2024.

{¶ 28} A review of the record confirms there was clear and convincing evidence to support the juvenile court's finding that J.D. could not or should not be placed back with her parents. Father was incarcerated at the time of the permanent-custody hearing for an offense against one of J.D.'s siblings. R.C. 2151.414(E)(5). Additionally, the evidence established that Father had pleaded guilty to violations of R.C. 2907.05 and 2919.22(A), for which a sibling of the child was the victim. R.C. 2151.414(E)(6). Finally, there was a documented history of persistent unaddressed substance abuse and Father tested positive for cocaine in April 2024. R.C. 2151.414(E)(2). Accordingly, the juvenile court's findings on the first prong of permanent custody were supported by clear and convincing evidence.

{¶ 29} In addition to the foregoing, Father argues that the juvenile court could have extended temporary custody until at least October 2025 to allow him time to complete case-plan objectives. As the State points out in its brief, however, the statutory term for an order of temporary custody is one year, not two years. *In re R.A.*, 2021-Ohio-4126, ¶ 27 (8th Dist.). Further, the extension is not automatic. A juvenile court may extend temporary custody for up to six months at a time if the agency files a motion for an extension. *Id.* Additionally, the juvenile court must find

> by clear and convincing evidence that the extension is in the best interest of the child, there has been significant progress on the case-plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension.

R.C. 2151.415(D)(1).

{¶ 30} Here the juvenile court explicitly found that none of the R.C. 2151.415(D)(1) factors applied and that an extension of temporary custody was unwarranted. The record reflects that the child was taken into custody in September 2023 and, yet at the time the agency had filed for permanent custody, neither Mother nor Father had made significant progress on the case plan. As of the permanent-custody hearing, Collins opined that Father would have to start the case-plan objectives from the beginning. Additionally, the record reflects Father would have to begin those objectives after he was released from prison, which was not scheduled to occur until March 2025.

**{¶ 31}** Accordingly, the trial court's finding that the child could not be placed with the parents within a reasonable time or should not be placed with the parent was supported by clear and convincing evidence.

**{¶ 32}** Based on the foregoing, the assignment of error is overruled.

**{¶ 33}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MICHELLE J. SHEEHAN, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR